## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INVENTEL.TV LLC and Yasir Abdul on behalf of itself and, all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　-against-<br><br>ITRIA VENTURES LLC, Biz2Credit Inc., John Does 1-10<br>　　　　　Defendants. | DOCKET  #<br><br>Date filed:<br><br>CLASS ACTION COMPLAINT |

Class Representative Plaintiff, INVENTEL.TV LLC ("InvenTel.tv"), on behalf of itself and all others similarly situated (the "Class"), by their undersigned attorney, as and for a Class Action Complaint against Itria Ventures LLC, Biz2Credit Inc., and John Does 1-10 (collectively, "Itria") alleges as follows:

### PRELIMINARY STATEMENT

1. This class action arises from Defendant, Itria's, practice of fraudulently misrepresenting loans as financing agreements, improperly looking outside of the purportedly purchased future receivables for repayments of the loans, unlawfully charging criminally usurious interest rates, and illegally committing multiple acts of racketeering.

2. As will be shown upon discovery, the actions of Itria are a basic part of its business model and impacts most, if not every other borrower that Itria loans funds to using nominal future receivables purchase agreements (the "Class").  Further many of the claims set forth herein are common to the entire class.

### PARTIES

3. Plaintiff, InvenTel.tv, is a limited liability company organized and existing pursuant to the laws of the State of New Jersey with a principal place of business at 200 Forge Way, Unit 1, Rockaway, NJ 07866.

4. InvenTel.tv is a direct response television marketing company involved in, amongst other things, the development, production, sale, marketing, and distribution of consumer products.

5. Plaintiff, Yasir Abdul ("Abdul") is an individual who resides at 802 W. Shore Drive, Kinnelon, NJ 07405.

6. Abdul is the CEO of InvenTel.tv, as well as CEO of InvenTel Products LLC.

7. Pursuant to N.J.S.A. § 2A:19-1, et seq., on or about January 15, 2021, Inventel Products, LLC, as assignor made, executed, and delivered to Anthony Sodono, III, ESQ., as Assignee, an assignment of Inventel Products LLC's entire estate in trust for the benefit of creditors.

8. On or about, March 4, 2021 Itria compelled InvenTel.tv to make payments under the below loan agreements to Itria and further compelled InvenTel.tv to become a merchant under the loans described below. Accordingly, InvenTel.tv LLC and InvenTel Products LLC are collectively referred to herein as "Merchant" or "InvenTel"

9. Merchant received loans from Itria, which loans purported to be Future Accounts Receivable purchases.

10. Abdul is a personal guarantor on said loans to Merchant.

11. InvenTel.tv, Yasir Abdul, as well as all members of the proposed Class, have received loans or benefits related to loans from Itria which have been improperly purported to be future accounts receivable purchase agreements.

12. Defendant, Itria Ventures LLC, is a limited liability company organized and existing pursuant to the laws of the State of Delaware with a principal place of business at One Penn Plaza, Suite 4530, New York, New York 10119.

13. Defendant, Biz2Credit Inc., is a limited liability company organized and existing pursuant to the laws of the State of Delaware with a principal place of business at One Penn Plaza, Suite 4530, New York, New York 10119.

14. John Does 1-10 are fictitious names for individuals associated with either Itria Ventures LLC, Biz2Credit Inc., or both of them.

15. Biz2Credit, Itria Ventures LLC and John Does 1-10 are collectively referred to as "Itria".

16. Itria is engaged in the business of providing financial accommodations to its customers.

17. Said financial accommodations are principally through loans though they are often misrepresented to be purchases of future accounts receivable.

18. Itria is also regularly engaged in criminal usury.

19. Itria is also regularly engaged in loan sharking.

20. Itria is also regularly engaged in criminal Racketeering activity.

## JURISDICTION & VENUE

21. Both Plaintiffs are citizens of the State of New Jersey.

22.  Neither of the corporate defendants, Biz2Credit Inc and Itria Ventures LLC are citizens of New Jersey as they maintain their principal place of Business in the State of New York and are organized pursuant to the laws of Delaware.

23. None of the individual defendants, John Does 1-10, are citizens of New Jersey.

24. As the amount in controversy is more than $75,000.00, Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332.

25. Claims in this action arise pursuant to 18 U.S.C. 1964 (Civil Rico); accordingly, as a federal question is presented, Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331.

26. To the extent that other claims are present which might arise from State law or common law, they are part of the case or controversy; Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1367.

27. Venue in this action properly lies in this Court pursuant to a forum selection clause contained in Itria's standard contract which states in relevant part: "any County in the State of New York."

## CLASS ALLEGATIONS

28. This action is properly maintainable as a class action pursuant to Rule 23 of the F.R.C.P.

29. This action is brought on behalf of the Named Plaintiffs and a class consisting of every other person or entity who borrowed money from Defendants using a nominal "Future Receivables Sale Agreement" or similar arrangement within the 4 year Statute of Limitations and whose funding was treated as a loan by Defendants seeking repayment under all circumstances, specifically even when the percentage of the receivables set forth in the contract is less than the nominal daily amount of repayment.

30. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be in excess of 40 individuals. In addition, the names of all potential members of the putative class are not known.

31. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions include, but are not limited to, whether the funds received from Defendants by Named Plaintiffs and members of the

putative class were loans which Defendants believed required to be paid back under all conditions rather than purchases of future receivables which Defendants fraudulently asserted them to be and whether they are enforceable in light of the criminally usurious rates of interest charged. The questions further include whether the Defendants committed a pattern of mail fraud, wire fraud and other Racketeering activities in entering into and illegally enforcing said loans.

32. The claims of the Named Plaintiffs are typical of the claims of the putative class  because the same or similar standard contract was required by Defendants to be used in the funding of all members of the Class.

33. The Named Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

34. Pursuant to FRCP 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  There is specific desirability of maintaining the litigation of claims in this particular forum because pursuant to the Defendants' standard contract, it is to be interpreted under the laws of the State of New York and the Defendants have consented to the jurisdiction of the Federal Courts sitting in the State of New York, and Defendants maintain their offices within the jurisdiction of the Southern District.

35. Further, pursuant to FRCP 23(b)(2), declaratory relief, namely that the underlying contracts are not enforceable against the members of the class due to their fraudulent nature is appropriate with respect to the entire class.

## **FACTS**

### *Relationship of the Defendants*

36. Itria Ventures LLC, is a financial services company engaged in the business providing financing via loans and other transactions to its customers.

37. The financial services provided by Itria Ventures LLC, a Delaware entity with principal place of business in New York, described includes, but is not limited to providing funding to InvenTel Products LLC, a New Jersey entity with principal place of business in New Jersey.

38. As such, Itria Ventures LLC is an enterprise engaged in, or the activities of which affect, interstate commerce.

39. Biz2Credit Inc. is an affiliate of Itria and is a broker that assists businesses in applying for and obtaining financing.

40. The brokerage services of Biz2Credit Inc. includes but is not limited to brokering and facilitating the funding provided by Itria Ventures LLC to InvenTel Products LLC.

41. As such, Biz2Credit Inc. is an enterprise engaged in, or the activities of which affect, interstate commerce.

42. Biz2Credit Inc. and Itria Ventures LLC have overlapping ownership.

43. Biz2Credit Inc. and Itria Ventures LLC have overlapping staffs.

44. Biz2Credit Inc. and Itria Ventures LLC's overlapping staffs include John Does 1-10.

45. Biz2Credit Inc. and Itria Ventures LLC share office space.

46. Biz2Credit Inc. and Itria Ventures LLC have overlapping ownership.

47. Biz2Credit Inc. and Itria Ventures LLC's overlapping ownership includes John Does 1-10.

48. Accordingly, each of the Defendants is or is employed by or associated with one or more enterprises engaged in activities which affect trade or commerce.

49. Itria Ventures LLC and Biz2Credit Inc. act through their employees John Does, 1-10.

50. As indicated above, Biz2Credit Inc., Itria Ventures LLC, and John Does 1-10 are collectively referred to as "Itria".

51. Further, as will be shown below, each Defendant conducted or participated in the conduct of the enterprise's affairs through a pattern of ongoing racketeering activity.

52. Defendants conducted or participated in the conduct of the enterprises' affairs.

53. The pattern of racketeering activity employed by defendants, which involved two or more of the predicate acts alleged herein included, but was not limited to, mail fraud, wire fraud, and extortion as well as collecting unlawful debt.

54. All defendants entered into agreements and conspired with one another (or otherwise agreed) that they or one or more of them would engage in the illegal activities described herein or that they will aid one another in the planning or commission of same.  All of the defendants entered into said agreements with the purpose of promoting or facilitating the commission of the activities described herein.

55. One or more defendants then took at least one overt act in furtherance of the Defendants' agreement.

*The Loans in General*

56. Itria regularly and systematically provides funding to businesses that require same (Itrias' "customers").  Further Itria often advertises and markets such funding to their customers as "Future Receivables Purchases" that the Customers only need to pay back to Itria from a percentage of Future Receivables, and importantly, if there are insufficient Future Receivables the funds do not need to be paid back.

57. Pursuant to Itria's standard Contracts, Itria actually explicitly states that they will assume the risk that Future Receivables may not be available.

58. However, it is clear that despite all language in the contracts to the contrary, Itria actually assumes no such risk and deems all funds loaned to be due and payable under all conditions, without respect to the amount of Future Receivables along with criminally usurious interest rates.

59. Furthermore, as this is and has been Itria's pattern of practice, they know at the time they send the contracts for signing through the mail and via email that they are fraudulently and intentionally misleadingly named and described.

### *The Loans that InvenTel Received*

60.  As seen in Exhibit A, Itria's standard contract refers to the borrower as "Merchant"; further as set forth above (¶ 8, supra) Itria required that Inventel.tv assume status as a Merchant under the loan agreements.  Accordingly, the term "Merchant" herein refers to Inventel.tv LLC and Inventel Product LLC.

61. On or about July 3, 2019, Itria and Merchant entered into an agreement pursuant to which Itria loaned Merchant $244,187.50 ("First Loan").

62. In the days and weeks leading up to that date, the loan documents were sent by Itria to Merchant via email.

63. At the time of the First Loan, Itria required that Merchant pay back $305,000.  Moreover, this payment back was to be made at a rate of $1,452.38 per day.

64. This works out to Merchant paying Plaintiff $305,000.00 after only 210 days.

65.  That translates into $60,812.50 in interest in only 210 days or an annualized interest rate of approximately 43.29% which is well over any reasonable interest rate and fully criminally usurious.

66. Itria required Abdul to personally guaranty the repayment of said first loan including said criminally usurious interest.

67. On or about September 4, 2019, Itria and Merchant entered into a second agreement pursuant to which Itria loaned Merchant $244,500.00 ("Second Loan").

68. In the days and weeks leading up to that date, the loan documents were sent by Itria to Merchant via email.

69. At the time of the Second Loan, Itria required that Merchant pay back $305,000.00. Moreover, this payment back was to be made at an even faster rate of $1,613.76 per day.

70. This works out to Defendants paying Plaintiff $305,000.00 after only 189 days.

71.  That translates into $60,500.00 in interest in only 189 days or an annualized interest rate of approximately 47.79% which is again well over any reasonable interest rate and fully criminally usurious.

72. Itria required Abdul to personally guaranty the repayment of said first loan including said criminally usurious interest.

73. These ultra-high criminally usurious interest rates shock the conscience and should not be condoned.

74.  An individual guarantor should not be bound to an agreement with such criminally usurious rates.

75. Itria commonly charges similar usurious interest rates on the loans it makes to all the members of the Class.

76. Itria commonly falsely and fraudulently describes its loans as future receivables purchases.

77. Itria commonly requires personal guarantys from individuals related to the borrowers.

*Itria's mail fraud and wire fraud*

1. Itria falsely and fraudulently described both the First Loan and Second Loan as a future receivables purchase.

2. Itria's standard loan contracts are fraudulently and deceptively designed and intended to mislead borrowers and courts into believing that they are future receivables purchase agreements when, in actuality, they are not.

3. The purpose of same was to fraudulently mislead borrowers into believing they were not paying criminally usurious interest as well as to decieve the courts into believing that Itria was not collecting criminally usurious interest.

4. The Contracts were sent on many occasions by email and through the mail and same constitutes both mail fraud and wire fraud.

5. Specifically in the days and weeks leading up to the signing of each contract, the contracts were sent via email from Itria to Plaintiffs.  That happened on multiple occasions between June 2019 and September 2019.

6. Similarly, Itria caused its attorneys to compound the problems by sending the contracts to courts and litigants by electronic filing and by mail and such also constitutes mail fraud and wire fraud.  That happened on multiple occasions in 2021.

*Itria's fraudulent designation of the contracts*

7. The Title of the loan agreements describe each as a "Future Receivables Sale Agreement."

8. Paragraph 1 of each agreement states "This is a contract for the purchase and sale of Future Receivables.  Purchaser [Itria] is buying a stated amount of the Merchant's [InvenTel's] Future Receivables (the Amount Sold) for the Purchase Price set forth on the front page of this Agreement.  Purchaser's right to receive payments under this Agreement is contingent on your [Inventel's] receipt of Future Receivables.

9. Paragraph 1 of each agreement further states "you confirm that the purchase and sale of Future Receivables contemplated by this Agreement does not constitute a loan transaction…because this transaction is not a loan, Purchaser [Itria] has assumed the risk that Future Receivables may not be available for remittance to Merchant.

10. Paragraph 2(c) of each agreement defines "Future Receivables" to include "any and all: (i) funds that Merchant [InvenTel] receives from its _customers_ [emphasis added] using credit cards…(ii) funds that Merchant [InvenTel] receives from its _customers_ [emphasis added] of cash."

11. From prior to the time that Itria made the loans, Itria was fully aware that InvenTel has a Factor, Franklin Capital Holdings LLC ("Franklin").

12. Moreover, Itria knew that Franklin had a priority UCC-1 security interest in all of Inventel's assets.  Same was fully of record and on file for years prior to the loans.

13. Funds from customers which resulted from sales of product went to Franklin and _not_ to Inventel.

14. Moreover Itria knew that funds from customers which resulted from sales of product went to Franklin and _not_ to Inventel.

15. Accordingly, Inventel did not possess Future Receivables which might belong to Itria pursuant to a purchase agreement.

16. Further, Itria knew that Inventel did not possess Future Receivables which might belong to Itria pursuant to a purchase agreement.

17. Despite the fact that Itria knew all of the above, Itria still acted as if it was owed repayments pursuant to the Loans.

18. Itria's actions clarified and revelaed their own position that they viewed the financing as transactions which require repayments under all conditions rather than simply a purchase of very specific Future Receivables.

19. Since the transactions were Loans, and the amount to be repaid was criminally usurious, they are considered to be unlawful debt under US RICO laws.

20. Itria took multiple wrongful, harmful and extortive acts seeking to collect on the loans and actually collecting unlawful debt payments.

*Itria's Wrongful and Extortive Acts*

*November 2019 – November 2020*

21.  Despite knowing full well that Franklin had a priority security lien on all of InvenTel's assets, and despite knowing full well that funds go straight from Inventel's customers to Franklin and do not go to InvenTel; nevertheless Franklin improperly caused InvenTel's customers to hold back funds properly due to Franklin.

22. As an example, on or about November 2019 Itria sent correspondence to Dollar General, a customer of InvenTel, wrongfully and fraudulently claiming a perfected lien on all of InvenTel's accounts and assets.  Same was sent both via US mail and email.

23. Approximately a year later, in November 2020, when InvenTel finally learned why Franklin had not received payment from Dollar General, InvenTel sent correspondence to both Dollar General and Itria clearly explaining that the funds in question do not go to InvenTel, but instead go to Franklin.

24. InvenTel pointed out to Itria at the time that its activity, in holding funds due to Franklin, in order to force a payment and other concessions from InvenTel amounts to extortion and demanded that they inform Dollar General that they can release the funds.

25. InvenTel similarly pointed out to Itria that since InvenTel did not have any receivables, there was actually no funds due under the loan agreements.

26. Itria adamantly refused to so withdraw the hold on the funds unless Inventel made payments to Itria and entered into another agreement waiving its rights.  Itria thereby committed extortion and forced InvenTel to enter an agreement which was devoid of legal consideration.

27. Finally, after InvenTel made further payments and signed an agreement on or about November 11, 2020, Dollar General released funds to Franklin.

*January 2021 – March 2021*

28. As indicated, in or about January 2021, InvenTel Products LLC commenced an Assignment for the Benefit of Creditors.

29. Claims related to same were heard under New Jersey Docket # MRS-P-0576-2021.

30. Itria filed objections which were baseless for many reasons including that in light of the fact that InvenTel had no Receivables (funds from customers went to Franklin rather than to Inventel), it could not owe anything to Itria.

31. Nevertheless, in order to secure even more unlawful debt payments that it was not entitled to, Itria continued to press fraudulent claims and treat the purported future receivable purchase as a loan which requires payment under all conditions.

32. In order to permit the ABC to go forward, Itria again forced Inventel to make concessions that it was not entitled to.

33. These concessions included further payments and forcing InvenTel.tv LLC to assume the debt of Inventel Products LLC despite the fact that neither Inventel entity owed any funds to Itria as there were no receivables.

*April 2021 – July 2021*

34. In or about April 2021, Itria wrongly filed a motion in the New Jersey Superior Court seeking judgments on the criminally usurious loans against InvenTel.tv LLC, InvenTel Products LLC and Yasir Abdul personally based on agreements which themselves were secured under duress based upon the extortion set forth herein.

35. Not only that, but the amount of the Judgment sought, and ultimately received, by Itria was admitted to be incorrect by Itria months later.

36. Thereafter, when the ABC court was nearly making a determination, Itria again refused to permit the court to go forward, despite already having forced InvenTel.tv to assume the debt, without exacting yet more concessions from Plaintiffs, including even further payments despite the lack of receivables and no moneys being due.

*October 2021*

37. In October 2021, Itria again froze funds belonging to Franklin, this time through use of the Sheriff's office.

38. Once again, Itria forced the plaintiffs to make concessions and pay $65,000.00 to Itria at the time.

39. All this despite the lack of receivables and the fact that the funds frozen did not even belong to any of the plaintiffs, but rather to Franklin.

40. It amounted to freezing funds due to one party, namely Franklin, which owed nothing to Itria, in order to compel a payment from InvenTel, which again also owed nothing.  This is clear extortion as well as collection of an unlawful debt.

*February 2022*

41. Currently, Itria is freezing accounts owned by Abdul in order to secure payment.  While it is true that Abdul does have a personal guaranty, and a Judgment (which issued on default - without opposition) does exist, Itria knows full well the Judgment is based on fraudulent claims and the funds were never due because there were never any receivables during any of the relevant times discussed herein.  For the same reason, Abdul does not owe anything to Itria either under the loan agreements (which were criminally usurious) or the Judgment.

**FIRST CAUSE OF ACTION – FRAUD**

42. The above paragraphs are repeated and realleged herein.

43. As set forth herein, Defendants have a practice of using the same standard contracts.

44. Pursuant to the contracts, Defendants are only entitled to payment of a certain percentage of Future Receivables.

45. However, at the time those contracts are entered into, Defendants intention is to ignore such limitation and seek full recovery regardless of the amounts of receivables collected by the Plaintiffs and any other members of the class.

46. The intent of Defendants in using the language in the Contract is multi-fold:

    1. It is to lull borrowers into a sense of security, believing that if they less

       receivables, they will have to pay less to Defendants;

    2. It is to deceive borrowers and regulators so they can charge high rates of interest

       which are otherwise usurious and illegal under the relevant laws;

    3. It is to deceive the courts which are unaware of the subterfuge that Defendants do

       not actually in practice assume the risk that the receivable might not be there as

       the contracts claim.

47. The fraudulent Contracts were sent through the mail and through email both by Defendants themselves, and by the attorneys for and on behalf of the Defendants to the Plaintiffs and other members of the Class and to various Courts in attempts to wrongly and unjustly collect under said fraudulent contracts.

48. Plaintiffs and the other members of the class relied on such false promises.

49. As a result, Plaintiffs and the other members of the Class sustained damages.

50. As a result the contracts which called for repayment by Plaintiffs of approximately $610,000 and which have a current outstanding balance of over $200,000.00 (because nearly $400,000 have already been paid to Plaintiffs)  must be declared unenforceable and Plaintiffs ordered to return to Defendants all funds already paid.

## SECOND CAUSE OF ACTION – CIVIL USURY

51. The above paragraphs are repeated and realleged herein.

52. Each of the loans that Plaintiffs took out from Defendants were for less than $250,000.

53. Defendant, Abdul, was required to personally guaranty each loan, and they were in effect subject to New York's civil usury rate of no more than 16% per annum.

54. As previously described, at interest rates of over 40% for each, loan they were usurious.

55. Plaintiffs sustained damages in the form of thousands of dollars of interest.

56. To the extent that other members of the Class were also required to provide personal guarantys for loans under $250,000 they were also violative New York's civil usury laws.

57. All members of the class sustained damages in the amount of thousands of dollars.

## THIRD CAUSE OF ACTION - CRIMINAL USURY

58. The above paragraphs are repeated and realleged herein.

59. Each of the loans that Plaintiffs took out from Defendants were for less than $2,500,000.

60. They were in subject to New York's criminal usury rate of no more than 25% per annum.

61. As previously described, at interest rates of over 40% for each, loan they were usurious.

62. To the extent that other members of the Class had loans under $2,500,000 they were also violative New York's criminal usury laws.

63. Plaintiffs and all members of the class sustained serious damages as a result of the criminal usury.

64. The loans should be declared unenforceable, and the Plaintiffs and all members of the Class should not be required to repay them.

65. Moreover, the Defendants should be disgorged of the moneys they already unlawfully collected on the criminally usurious loans.

## FOURTH CAUSE OF ACTION - GBL 349

66. The above paragraphs are repeated and realleged herein.

17

67. Defendants conducted their business with deceptive acts and practices as set forth herein in violation of New York's GBL 349.

68. The deceptive business practices and acts include but are not limited to:

    1.  intentionally misdescribing the loans as purchases of receivables.

    2.  Seeking to recover from Plaintiffs on the loans despite being informed that there are no receivables and failing to inform the courts.

    3.  Wrongfully claiming inaccurate amounts due in filings with the Courts.

69. As a result of the deceptive businesses and acts, Plaintiffs and all members of the Class sustained significant injuries and are entitled to compensatory damages, treble damages, and attorneys fees.

## FIFTH CAUSE OF ACTION - EXTORTION

70. The above paragraphs are repeated and realleged herein.

71. Defendants have committed multiple acts of extortion including but not limited to on multiple occasions requiring Plaintiffs to make payments to Defendants and also sign agreements waiving certain rights in order for Defendants to release holds it placed on funds belonging to third-parties, namely Franklin.

72. As a result, Plaintiffs suffered damages including, but not limited to paying funds beyond what it was obligated to – beyond the percentages of receivables they had as well as nominally waiving certain rights.

## SIXTH CAUSE OF ACTION - THEFT BY FALSE PRETENSES

73. The above paragraphs are repeated and realleged herein.

74. Defendants committed theft by false pretenses on multiple occasions including by forcing Plaintiffs to pay funds that they were not required to pay under the contracts because of the lack of receivables.

75. Plaintiffs sustained damages as a result measured at least in the thousands of dollars it paid that it was not obligated to pay.

## SEVENTH CAUSE OF ACTION - BREACH OF CONTRACT

76. The above paragraphs are repeated and realleged herein.

77.  Defendants breached the contracts in multiple ways including looking beyond the receivables for repayment of the loans as well as forcing such payments.

78. Plaintiffs sustained significant damages as a result.

## EIGHTH CAUSE OF ACTION - UNFAIR BUSINESS PRACTICES

79. The above paragraphs are repeated and realleged herein.

80. Defendants conducted their business with multiple unfair business practices including:

1.  intentionally misdescribing the loans as purchases of receivables.

2. Seeking to recover from Plaintiffs on the loans despite being informed that there are no receivables and failing to inform the courts.

3. Wrongfully claiming inaccurate amounts due in filings with the Courts.

4. Employing extortion and acts of theft by false pretenses to wrongfully collect funds and other business concessions.

81. Plaintiffs sustained serious damages as a result of Defendants unfair business practices.

## NINTH CAUSE OF ACTION – CIVIL RICO

82. The above paragraphs are repeated and realleged herein.

83. Defendants are liable under Civil Rico under 18 U.S.C. 1962(a) because:

1. Through the collection of unlawful debt, they are using the funds so collected to invest all or part of same in the continuing operation of the corporate defendants ongoing business activities which is engaged in and the activities of which affect interstate commerce.

2. Through a pattern of racketeering activity including mail fraud, wire fraud, extortion, they are using the funds thereby collected to invest all or part of same in the continuing operation of the corporate defendants ongoing business activities which is engaged in and the activities of which affect interstate commerce.

84. Defendants are liable under Civil Rico under 18 U.S.C. 1962(c) because:

1. Defendants are or are associated with and/or employed by enterprises engaged in, or the activities of which affect, interstate commerce (namely the corporate defendants) and conduct or participate in the conduct of such enterprises' affairs through a collection of unlawful debt.

2. Defendants are or are associated with and/or employed by enterprises engaged in, or the activities of which affect, interstate commerce (namely the corporate defendants) and conduct or participate in the conduct of such enterprises' affairs through a pattern of racketeering activity including mail fraud, wire fraud, and extortion.

85. Defendants are liable under Civil Rico under 18 U.S.C. 1962(d) because they conspired to violate the above.

86. Plaintiffs sustained significant damages as a result.

## TENTH CAUSE OF ACTION – NEW JERSEY RICO

87. The above paragraphs are repeated and realleged herein.

88. Although the contracts were be interpreted under New York laws, subsequently, when Defendants sought to wrongfully collect under them, they came into the State of New Jersey where Plaintiffs are located and where Plaintiffs' assets and funds are located and committed those acts in the State of New Jersey.  These are the acts described above and include extortion, theft by false pretenses, unfair business practices, deceptive business practices

89. Defendants are liable under New Jersey Civil Rico under N.J.S.A. 2C:41-2(a) because:

   1. Through the collection of unlawful debt, they are using the funds so collected to invest all or part of same in the continuing operation of the corporate defendants ongoing business activities which is engaged in and the activities of which affect trade or commerce.

   2. Through a pattern of racketeering activity including mail fraud, wire fraud, extortion, theft by false pretenses, criminal usury, and deceptive business practices they are using the funds thereby collected to invest all or part of same in the continuing operation of the corporate defendants ongoing business activities which is engaged in and the activities of which affect trade or commerce.

90. Defendants are liable under Civil Rico under N.J.S.A. 2C:41-2(c) because:

   1. Defendants are or are associated with and/or employed by enterprises engaged in, or the activities of which affect, trade or commerce (namely the corporate defendants) and conduct or participate in the conduct of such enterprises' affairs through a collection of unlawful debt.

   2. Defendants are or are associated with and/or employed by enterprises engaged in, or the activities of which affect, trade or commerce (namely the corporate

defendants) and conduct or participate in the conduct of such enterprises' affairs

through a pattern of racketeering activity including mail fraud, wire fraud,

extortion, theft by false pretenses, criminal usury, and deceptive business

practices.

91. Defendants are liable under Civil Rico under N.J.S.A. 2C:41-2(d) because they conspired

to violate the above.

92. Plaintiffs sustained significant damages as a result.

## ELEVENTH CAUSE OF ACTION – NJ DECEPTIVE BUSINESS PRACTICES (N.J.S.A. 2C:21-7

93. The above paragraphs are repeated and realleged herein.

94. Defendants conducted their business with deceptive acts and practices as set forth herein

in violation of New Jersey's N.J.S.A. 2C:21-7.

95. The deceptive business practices and acts include but are not limited to:

1. Seeking to recover from Plaintiffs on the loans despite being informed that there

are no receivables and failing to inform the courts.

2. Wrongfully claiming to Courts that the Loans were asset purchases.

3. Wrongfully claiming inaccurate amounts due in filings with the Courts.

96. As a result of the deceptive businesses and acts, Plaintiffs and all members of the Class

sustained significant injuries and are entitled to compensatory damages, treble damages,

and attorneys fees.

**WHEREFORE**, Plaintiffs demand Judgment:

1. declaring the Loan agreements to be criminally usurious and no payments due

thereunder.

22

2. Awarding Plaintiffs Compensatory Damages at least in an amount of $75,000 to be determined in Court.

3. Awarding Plaintiffs Treble Damages

4. Awarding Plaintiffs legal fees associated with this action.

5. Awarding Plaintiffs such other and further relief as the Court deems just and appropriate.

Dated: February 7, 2022
          Rockaway, New Jersey

s/ *Jeffrey Lubin*
Jeffrey Lubin, Esq.
InvenTel.tv
200 Forge Way, Unit 1
Rockaway, NJ 07866
Tel: 973-531-4423
Email: jeff@inventel.tv
Attorney for Plaintiff and the Class

## JURY DEMAND

Plaintiffs demand a jury trial for each issue triable of right by a jury.

Dated: February 7, 2022
          Rockaway, New Jersey

s/ *Jeffrey Lubin*
Jeffrey Lubin, Esq.
InvenTel.tv
200 Forge Way, Unit 1
Rockaway, NJ 07866
Tel: 973-531-4423
Email: jeff@inventel.tv
Attorney for Plaintiff and the Class
